# THOMPSON v. SCHULZ.—240 S. W. (2d) 252.

Middle Section.   May 17, 1949.

Petition for Certiorari denied by Supreme Court, October 5, 1949.

490

J. E. Travis and Carl R. Hardin, both of Nashville, for plaintiff in error.

H. Frank Taylor and Fred Elledge, Jr., both of Nashville, for defendant in error.

FELTS, J. In this case Schulz sued Thompson for damages for malicious prosecution. There was a general verdict and judgment for him for $1,000. Thompson appealed in error and insists that a verdict should have been directed for him because there was no evidence to negative probable cause for the prosecution or to show Schulz suffered any damage in consequence of it.

It grew out of Schulz's failure to pay for labor and materials under a contract between him and Thompson. Thompson owned a lunch wagon—an old interurban street car; its wheels had been taken off and it had been set on a foundation and affixed to the soil. Schulz agreed to construct an addition to it—a room along its side.

Thompson agreed to pay him $754.00, one-third down, one-third when the materials were delivered, and the balance when the work was completed. Any changes under the contract were to be paid for as extras.

Thompson paid him $251.00 March 25, 1947, when the contract was signed, and about $18.00 a day or two later for some minor changes in the roof. A few days later, when the materials had been delivered, Thompson paid him $251.00 more, his payments to Schulz totaling $520.00. Schulz's testimony, which was accredited by the jury, was that Thompson told him to build a room also at the end of the lunch wagon, that he told Thompson this would be extra and he proceeded to get the materials and construct this room, and that all the work was completed April 12, 1947.

Schulz's bills for labor and materials in the construction ran to about $1,000.00, and he was unable to pay these bills as the work was being done. A few days before it was completed these unpaid laborers and materialmen began to notify Thompson of their claims for liens on his property under the statute. Code Sec. 7914. He was incensed that he might have to pay them to protect his property. He employed a lawyer and they investigated the amount of the unpaid claims and undertook to get them settled.

He swore out a criminal warrant charging Schulz with violation of Code Section 7944a by misappropriating the $520.00 he had paid Schulz under the contract. This warrant was issued April 16, 1947. He talked to the sheriff "two or three times" urging the sheriff to arrest Schulz. On April 18, he went to Schulz's home, found Schulz there, went to the sheriff's office, got a deputy, took him to Schulz's home, he arrested Schulz, and took

him to the county jail. He was there imprisoned till he could make bond for his release.

Thompson and his attorney then went to the office of the District Attorney-General and got one of his assistants to submit the matter to the grand jury. Thompson went before the grand jury and procured them to return an indictment against Schulz, charging him with fraudulently and feloniously using $530, alleged to have been paid him under the contract, for purposes other than payment for labor and materials in the construction, this being a felony, Code Sec. 7944a, punishable by imprisonment in the penitentiary.

When that case came on to be tried Thompson appeared as prosecutor and had his attorney help the Attorney-General prosecute Schulz. Thompson was the first and only witness introduced. On cross examination he was confronted with the bills Schulz had paid for labor and materials. They showed Schulz had not used any of the $520.00 for any other purpose but had paid out all of it plus $244.27 more, or $764.27, for labor and materials in the construction for Thompson. The trial judge then directed a dismissal of the case and entered a judgment acquitting Schulz of the charge. The present suit followed.

■ The law of malicious prosecution represents an adjustment of two paramount social interests: the interest of society to prosecute the guilty, and the interest of the individual not to be prosecuted wrongfully. It is not enough that the prosecution was unfounded; it must have also been malicious and without probable cause, to impose liability on the instigator of it. Poster v. Andrews, 183 Tenn. 544, 194 S. W. (2d) 337; F. W. Woolworth Co. v. Connors, 142 Tenn. 678, 222 S. W. 1053; Restatement, Torts, Vol. 3, pp. 380-411.

■ Definitions of probable cause, however differently expressed, all agree in these two essentials: (1) The prosecutor must in good faith have honestly believed the accused was guilty of the crime charged; and (2) his belief must have been reasonable—based on facts and circumstances sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged. The prosecutor must have made the investigation an ordinarily prudent person would have made in the circumstances. Citty v. Miller, 1 Tenn. App. 1, 4-9; Citizens Sav. & Loan Corp. v. Brown, 16 Tenn. App. 136, 138-140, 65 S. W. (2d) 851, 853; Annotations, 5 A. L. R. 1688-1695, 65 A. L. R. 225; 34 Am. Jur., Malicious Prosecution, Secs. 49-51; Restatement, Torts, Vol. 3, Sec. 662, Comment g, p. 406.

■ ■ Malice need not be ill will, but may be any motive other than a purpose in good faith to bring an offender to justice. Malice may be inferred from a motive to enforce payment of a debt or the doing of some other act the prosecutor wishes done. Poster v. Andrews, 183 Tenn. 544, 551, 194 S. W. (2d) 337, 340; Restatement, Torts, Vol. 3, Sec. 668.

Before bringing this charge against Schulz Thompson investigated the unpaid claims. But he did this not to see how much Schulz had paid, not to see whether Schulz was guilty of the charge, but to see how much he was going to have to pay. He repeated: ''I wasn't interested in how much he had paid. . . . I was interested in how much I was going to have to pay. . . . I wasn't interested in all that had been paid; I was interested in what he owed that I had to pay. Q. In other words, Mr. Thompson, you wanted to collect your money? A. No, sir, I wanted him to pay any bill.''

Indeed, he admitted he had found Schulz had paid some of the bills. After testifying about investigating the unpaid claims before April 16, when he brought the charge that Schulz had misused the $520 and paid none of it for labor or materials, he was asked on cross-examination if he had said that he had found that none of the bills had been paid, and he answered, "A. No, sir, I said we found the bills paid."

He was cross-examined as to a statement that he had made to another witness:

"Q. You made that statement, that you were going to put him (Schulz) in the penitentiary if it took your last dollar? A. No, sir.

"Q. What statement did you make? A. I may have said $1,000.

"Q. You were willing to spend that much to put him there? A. That is where he ought to have been."

So we think the jury could have reasonably found from the evidence that Thompson had no reasonable ground to believe, and in fact did not believe, that Schulz was guilty of the felony charged; that he made the charge to force Schulz, if possible, to pay the unpaid claims and discharge the liens on his property; and that the prosecution was without probable cause and malicious.

There is no merit in the insistence that Schulz suffered no damages from the prosecution. The charge against him, being a charge of a felony, was defamatory and would have been actionable per se as a slander or libel if the words had been merely spoken or printed, but the prosecution tended "to fix upon him the stigma of dishonor much more effectively than the spoken word or the printed libel". 1 Street, Foundations of Legal Liability, 326. In such a case general damages, including harm to reputation and mental suffering, are presumed

and may be recovered without proof of special damages. Goodwin v. Marsh, 4 Tenn. App. 23, 30; Restatement, Torts, Sec. 670; Prosser, Torts, 883-884.

Thompson relies on advice of counsel as a defense. To make out this defense, the burden was on him to prove that he honestly sought such advice, that he fully disclosed to his counsel all the material facts he knew and all he could have known by reasonable diligence, that his counsel advised the prosecution, and that he acted in good faith upon such advice. Nashville Union Stockyards, Inc., v. Grissim, 13 Tenn. App. 115, 125; Citizens Sav. & Loan Corp. v. Brown, 16 Tenn. App. 136, 138-140, 65 S. W. (2d) 852; Cooper v. Flemming, 114 Tenn. 40, 84 S. W. 801, 68 L. R. A. 849; Citty v. Miller, 1 Tenn. App. 1, 4; Wilmer v. Rosen, 102 W. Va. 8, 135 S. E. 225, 49 A. L. R. 261; Note, 11 Ann. Cas. 954, 955; 38 C. J. 479, 480, 54 C. J. S., Malicious Prosecution, Sec. 84.

These questions were submitted to the jury under a full and fair charge by the trial judge, and the jury resolved these issues against this defense. The evidence amply supports this finding. Among other things, it shows that Thompson did not disclose to his attorney all the facts he knew and all he could have ascertained by reasonable diligence. In his cross-examination this attorney stated that the proof of Schulz's paid bills in the criminal trial surprised him—in his words, "it knocked me off my feet."

In this connection Thompson complains of the trial judge's refusal to give this requested instruction: "I further charge you, that should you find that the defendant when he interviewed his attorney, gave him all the facts he had at that time, and his attorney took charge of and conducted the investigation from that point on, then there would be no duty incumbent upon

defendant, and if a mistake were made in the development of the facts, then this defendant could not be charged with the mistake, and your verdict should be for defendant.''

We think it was not error to refuse this instruction. It did not correctly state the law. Advice of counsel, to be a defense, must have been given upon all the facts known and all that could have been known by reasonable diligence. This requested instruction would have relieved both defendant and his attorney from using any diligence.

If an attorney at law assumes to investigate the facts, to act as agent for his client in making the investigation, then he owes the same duty as the client to use reasonable diligence and make proper investigation before advising a criminal prosecution; and he is chargeable with knowledge of all the facts which could have been learned by such diligence and investigation, and his client or principal is likewise chargeable. Citizens' Savings & Loan Corp. v. Brown, 16 Tenn. App. 136, 140, 65 S. W. (2d) 851, 853; Citty v. Miller, supra; Nashville Union Stockyards, Inc., v. Grissim, supra; Martin v. Wahl, 17 Tenn. App. 192, 204, 66 S. W. (2d) 608, 614; 54 C. J. S., Malicious Prosecution Sec. 30, pp. 988, 989.

It is urged that Schulz ought not to be allowed to maintain this action because he did not have a contractor's privilege license from the City of Nashville at the time he made the contract to do this work. No authority is cited for this insistence. The cases referred to merely hold that such a contractor cannot recover on his contract. But this is a suit in tort, a wrong independent of the contract; and we cannot see how the

matter of the privilege license can have anything to do with such a case.

Finally, it is said the amount of the verdict is excessive. Schulz was arrested and imprisoned in jail some three hours till he could make bond. He was charged with a felony and the charge was published in the newspapers of Nashville, where he lived. He suffered much humiliation and mental anguish, had a nervous breakdown, and was under the care of a doctor. He was off from work for some time. His expenses in the criminal trial were some $200.00 for making his bond and his attorney's fees.

We think the verdict was not excessive. Larger verdicts have been sustained in similar cases. Cf.: Poster v. Andrews, 183 Tenn. 544, 194 S. W. (2d) 337; Martin v. Wahl, supra; Citizens' Savings & Loan Corp. v. Brown, supra; Citty v. Miller, supra.

All of the assignments of error are overruled and the judgment of the circuit court is affirmed. The costs of the appeal in error are adjudged against plaintiff in error Thompson and the surety on his appeal bond.

Howell and Hickerson, JJ., concur.